IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

IN RE: APPLICATION      :
OF POLYMER SOLUTIONS            Civil Action No. DKC 18-1864
INTERNATIONAL, INC.     :

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case, brought under 28 U.S.C. § 1782, is the multi-faceted motion to intervene, to vacate the *ex parte order* granting the section 1782 application pursuant to rule 59(e), to quash the subpoena directed to Joseph M. Mischler and for protective order, or alternatively for a stay pending appeal. (ECF No. 15). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted in part and denied in part.

**I.    Background**

On June 22, 2018, Polymer Solutions International, Inc. ("Polymer") filed, *ex parte*, an application under 28 U.S.C. § 1782 to take discovery from Joseph M. Mischler ("Mr. Mischler").[1] (ECF

---

[1] Polymer is a "research and development and manufacturing company headquartered and incorporated under the laws of [the state of] New Jersey that manufactures and markets various material handling products constructed with plastics, polymers, and other materials." (ECF No. 1-1, at 1).

No. 1).  The following facts were set forth in Polymer's application.

In 2011, Polymer entered into a contract ("the contract") with CPA Global Limited ("CPA").[2] (ECF No. 1-5).  Under the terms of the contract, CPA was responsible for maintaining Polymer's portfolio of patents by paying periodic fees and overseeing compliance with administrative requirements in the respective countries where Polymer maintains patents.  (ECF No. 1-5).  For each patent renewal, Polymer agreed to reimburse CPA for all renewal costs and provide CPA a flat fee as compensation.  (ECF No. 1-5, at 5, 8-9).  Additionally, the contract stated that "[t]hese conditions and any contract made under them shall be governed by and construed in accordance with [Isle of] Jersey law and the courts of [the Isle of] Jersey shall have exclusive jurisdiction."  (ECF No. 1-3, at 10).

In 2017, after learning about two pending lawsuits against CPA for overcharging clients, Polymer demanded records "of the itemized disbursement costs paid by CPA Global to renew Polymer Solutions' patents."  (ECF No. 1-1, at 7; ECF No. 1-8).  CPA's response indicated that, given additional time to comply, CPA would respond to Polymer's request for itemized records in due course.

---

[2] CPA is "one of the world's largest Intellectual Property (IP) Management and Technology companies with 24 offices in 12 countries and over 2,000 employees."  (ECF No. 1-1, at 7) (internal quotation marks omitted).

(ECF No. 1-9, at 1). Polymer's legal representatives replied to CPA on February 12, 2018, granting CPA an extension of time to provide the requested itemized records and indicating Polymer's intent to pursue legal proceedings if CPA failed to comply. (ECF No. 1-10, at 3). CPA declined to provide the requested records, alleging that they were already provided over the course of the companies' business relationship. (ECF No. 1-11, at 2).

Polymer sought discovery from Joseph M. Mischler ("Mr. Mischler") by filing the aforementioned application to take discovery under 28 U.S.C. § 1782. (ECF No. 1). Mr. Mischler was formerly employed as CPA's Executive Vice President of Sales and Marketing for the Americas. (ECF No. 1-1, at 14). He purportedly confirmed that he has relevant knowledge, but that he would only disclose the information if he is subpoenaed. *Id.*

## II. Procedural Background

The court issued an order granting Polymer's application and authorizing Polymer to serve Mr. Mischler a subpoena pursuant to 28 U.S.C. § 1782 on June 27, 2018. (ECF No. 9). On June 28, 2018, Polymer issued Mr. Mischler a subpoena to testify at a deposition on July 15, 2018. (ECF 10-3, at 2). CPA filed an emergency motion to intervene on July 13, 2018, asking the court to approve CPA's intervention as of right under Fed.R.Civ.P. 24(a) and quash the subpoena issued to Mr. Mischler or, alternatively, provide a stay

and protective order delaying Mr. Mischler's deposition.[3] (ECF No. 10, at 12). The court approved a joint stipulation on July 13, 2018, resulting in termination of CPA's emergency motion to intervene. (ECF Nos. 11 & 12). In the stipulation, Polymer agreed to withdraw the June 28, 2018 subpoena, issue a new subpoena with a July 23, 2018 deposition date, and stay the deposition pending CPA's potential filing of a motion for relief from the court's order granting Polymer's § 1782 application. (ECF No. 11, at 2-3).

CPA filed a motion to intervene on July 23, 2018, asking the court to approve CPA's intervention as of right under Fed.R.Civ.P. 24(a), vacate the order granting Polymer's § 1782 application and quash the subpoena directed to Mr. Mischler or, alternatively, provide a stay and protective order delaying Mr. Mischler's deposition.[4] (ECF No. 15). Polymer filed a response in opposition on August 6, 2018 (ECF No. 16), and CPA replied on August 20, 2018 (ECF No. 17).

## III. Intervention

CPA moves to intervene as of right pursuant to Fed.R.Civ.P. 24(a). (ECF No. 15-1, at 11). CPA argues that (1) CPA is interested

---

[3] CPA alternatively requested intervention by permission pursuant to Fed.R.Civ.P. 24(b). (ECF No. 10, at 12).

[4] Again, CPA alternatively requested intervention by permission pursuant to Fed.R.Civ.P. 24(b). (ECF No. 15-1, at 11).

because the information sought in the § 1782 application could be used against it, and (2) the *ex parte* nature of Polymer's § 1782 application permits CPA to intervene and seek vacatur of the court's June 27, 2018 order. (ECF No. 15-1, at 11-12).

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as of right:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

In *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Perlberg*, 268 F.R.D. 218, 224-25 (D.Md. 2010), Judge Blake noted:

> "[T]o intervene as of right, a movant must show: (1) timely application; (2) an interest in the subject matter of the underlying action; (3) that a denial of the motion to intervene would impair or impede the movant's ability to protect its interest; and (4) that the movant's interest is not adequately represented by the existing parties to the litigation. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). "A party moving for intervention under 24(a) bears the burden of establishing a right to intervene, and must do so by satisfying all four requirements." *U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.*, 349 F.Supp.2d 934, 937 (D.Md. 2004) (citing *In re Richman*, 104 F.3d 654, 658 (4th Cir. 1997)).

CPA satisfies all four requirements for intervention as of right. First, the motion to intervene is timely because it was

filed shortly after CPA received notice of Polymer's approved §
1782 application. Second, CPA has a significantly protectable
interest in the subject matter of this case because Polymer's §
1782 application seeks to access information about CPA's billing
practices and fee structure and that information could potentially
be used in litigation against CPA. *See, e.g., JLS, Inc. v. Pub.
Serv. Comm'n of W. Virginia*, 321 Fed.App'x 286, 289 (4th Cir. 2009)
("Rule 24 does not specify what type of interest a party must have
to intervene as a matter of right, but the Supreme Court has
recognized that "'what is obviously meant . . . is a significantly
protectable interest.'" (*quoting Teague v. Bakker,* 931 F.2d 259,
261 (4th Cir. 1991)).  Third, denying CPA's motion to intervene
would allow the deposition of Mr. Mischler to proceed without
affording CPA an opportunity to provide evidence of why the court
should have denied Polymer's § 1782 application.  Finally, CPA has
demonstrated that its interests may not adequately be represented
by the existing parties to the litigation because no party
represented CPA's interest when the § 1782 application was
originally filed. *Id.* (noting that an intervenor's burden in
showing that the existing parties will not adequately represent
its interests is "minimal" and the intervenor need only show that
"representation of his interest *may* be inadequate") (emphasis
added) (internal citations and quotation marks omitted).

Additionally, other courts have recognized a party's right to intervene where the information sought by its opponent under a § 1782 application may be used against them. *In re Rivada Networks*, 230 F.Supp.3d 467, 472 (E.D.Va. 2017) ("It is well-settled that a part[y] against whom the requested information will be used . . . has standing to challenge the issuance of § 1782 subpoenas under the Rules of Civil Procedure and under the statute itself.") (internal quotation marks omitted). Because CPA demonstrated eligibility to intervene as of right, it is unnecessary to consider CPA's additional request to intervene by permission.

## IV. Motion to Vacate

CPA moves to vacate the June 27, 2018 order granting Polymer's *ex parte* request to subpoena Mr. Mischler. (ECF No. 15). CPA invokes Fed.R.Civ.P. 59(e), but argues that the heightened standard governing Rule 59(e) motions should not apply here because "CPA had no prior opportunity to oppose Polymer's [§] 1782 Application." (ECF No. 15-1, at 19). A motion to vacate under Rule 59(e) may be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "However, reconsideration of a judgment after its entry is an extraordinary remedy which should

be used sparingly." Grounds for Amendment or Alteration of Judgment, 11 Fed. Prac. & Proc. Civ. § 2810.1 (3d ed.).

CPA's motion to vacate is eligible for consideration because the motion was timely filed and provides the court with new evidence. Fed.R.Civ.P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.") The court's June 27, 2018 order was granted *ex parte*, and based primarily on the evidence provided in Polymer's § 1782 application. CPA's unawareness of the § 1782 application qualifies as "a legitimate justification for not presenting the evidence" at an earlier time. *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir. 1996).

Finally, CPA bears the burden of demonstrating that Polymer fails to meet the statutory and discretionary standards required of a § 1782 application. *See In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998), as amended (July 23, 1998) ("Inasmuch as relevant evidence is presumptively discoverable under § 1782, the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application, should rest with the party opposing the application."); *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d at 597 (7th Cir. 2011) ("Once a [§] 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the

discovery sought (or a truncated version of it) would disserve the statutory objectives.").

## A.    Choice of Law Clause

CPA argues that "the mandatory forum selection clause bargained for by the parties" requires denial of Polymer's § 1782 application.    (ECF 15-1, at 19).    CPA relies on a series of decisions discussing the relationship between forum selection clauses, § 1782, and evasion of forum selection agreements to assert that the forum selection clause is a threshold consideration barring discovery under § 1782. (ECF No. 15-1, at 19) ("This forum selection clause serves a critical channeling function that requires the Jersey court to address any request for discovery *in the first instance* pursuant to Jersey law. If Polymer is unsatisfied with the discovery it obtains in the Jersey Action, it may apply to the Royal Court for leave to seek [§] 1782 discovery in the United States."). Polymer disagrees, arguing that "[f]orum selection clauses do not bar [§] 1782 discovery." (ECF No. 16, at 16).

CPA's contention is misplaced. While the referenced cases provide helpful guidance for applying the discretionary factors listed in *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 247 (2004), they fail to articulate a blanket rule barring approval of

a § 1782 application based on the existence of a binding foreign forum selection clause.

The Fourth Circuit has not determined whether the presence of a contractual forum selection clause is determinative of a § 1782 application's outcome. *See, e.g., In re Naranjo*, 768 F.3d 332 (4th Cir. 2014). District court decisions have concluded that a party may seek discovery under § 1782 despite the existence of a forum selection clause, reaffirming that a choice of forum clause does not automatically preclude the district court from granting a § 1782 application. *Marra v. Papandreou*, 59 F.Supp.2d 65 n.9 (D.C. Cir. 1999) (holding foreign forum selection clause valid and noting that "[t]o the extent that the plaintiffs may need discovery from non-parties located in the United States, it can avail itself of 28 U.S.C. § 1782, which provides discovery assistance to foreign tribunals and to litigants before such tribunals."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Kozeny*, 115 F.Supp.2d 1243, 1244, 1249 (D.Colo. 2000) (though "the operative contracts contain[ed] English forum selection clauses," defendants still had the option of seeking "documents and testimony from U.S. witnesses under . . . 28 U.S.C. § 1782"); *Aventis Pharma v. Wyeth*, 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009) (considering a forum selection clause in light of the *Intel* factors enumerated below).

## B.  Statutory Factors

Title 28 U.S.C. § 1782(a), provides for "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247.  A federal court may grant such assistance where (1) the person from whom the discovery is sought resides or is found in the district of the district court to which application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or "any interested person."  28 U.S.C. § 1782(a).

CPA reasons that Polymer fails to fulfill the second statutory requirement because Isle of Jersey law bars pre-action discovery in most circumstances, Polymer cannot demonstrate that the evidence will actually be used in the potential litigation, and Isle of Jersey courts have previously opposed the use of evidence gathered under § 1782.  (ECF No. 15-1, at 25). Polymer disagrees, asserting that it made the requisite *de minimis* showing of relevance and possible use in the potential litigation.  (ECF No. 16, at 19).

The court previously recognized that Polymer's application met all of the § 1782 criteria.  (ECF No. 9, at 2) ("The application meets all of those criteria. As noted, the proposed deponent lives in Maryland, the discovery is to be used in proceedings before the Royal Court of Jersey, and the application is made by a party to

those proceedings."). The additional arguments provided by CPA in the motion to intervene and reply are unpersuasive and fail to alter the conclusion that Polymer's application fulfilled the statutory requirements.

### C. Discretionary Factors

The Supreme Court has also identified additional discretionary factors to guide the court when considering a § 1782 application:

> The factors are: (1) whether "the person from whom discovery is sought is a participant in a foreign proceedings;" (2) the receptivity of the foreign tribunal to U.S. Court assistance; (3) whether the [§] 1782 request is an attempt to "circumvent foreign proof gathering restrictions;" and (4) whether the documents sought are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

*Oncology Found. v. Avanza Dev. Servs., LLC*, 2017 WL 2376769, at *1 (D.Md. May 30, 2017). CPA argues that "all four factors weigh heavily in favor of denying Polymer's [§] 1782 Application." (ECF No. 15-1, at 26).

### 1. Mr. Mischler as Party to the Potential Litigation

First, CPA contends that the first *Intel* factor asks not about Mr. Mischler's status as a party to the foreign proceeding, but rather turns on "whether the information sought is in fact beyond the foreign court's jurisdiction." (ECF No. 15-1, at 27) (quoting *In re Green Dev. Corp. S.A. de C.V.*, 2015 WL 10319091, at *3 (D.Md. Oct. 1, 2015), *report and recommendation approved sub nom. In re*

*Green Dev. Corp. S.A. De C.V.*, CCB-15-2985, 2016 WL 640791 (D.Md. Feb. 18, 2016)) (internal quotation marks omitted). CPA concludes that the first *Intel* requirement necessitates denial of Polymer's application because Polymer is able to obtain the information through an alternative party (CPA itself) who, unlike Mr. Mischler, falls within the Royal Court's jurisdiction. (ECF No. 15-1, at 27). Polymer responds that "the first *Intel* factor weighs in favor of discovery" because Mr. Mischler will not be a participant in the impending Jersey action. (ECF no. 16, at 22).

"When the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "a foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel Corp.*, 542 U.S. at 264. The first *Intel* factor primarily questions whether Mr. Mischler is a participant in the potential Isle of Jersey litigation. It is clear that Mr. Mischler is not a participant in the potential litigation. This fact alone is enough to fulfill the first *Intel* factor. *Goenechea v. Davidoff*, No. CCB-15-3384, 2016 WL 560689, at *3 (D.Md. 2016) ("[The discovery target] is not a participant in the foreign proceeding, which makes the need for § 1782 assistance greater because nonparticipants may be outside the jurisdiction of the foreign tribunal."); *Oncology*

13

*Found.*, 2017 WL 2376769, at *1 ("[The discovery targets] are not parties to this action and thus not subject to the jurisdiction of the European Patent Office. This fact renders essential this Court's assistance in obtaining the documents."); *In re Chevron Corp.*, 753 F.Supp.2d 536, 539 (D.Md. 2010) (Regarding the first *Intel* factor, the court stated: "In this case, neither respondent[] . . . [is] part[y] to the Lago Agrio Litigation or the Treaty Arbitration, so this factor is completely satisfied.").

However, CPA points to *In re Green* as support that the first factor requires an additional inquiry into whether the "information sought is in fact beyond the foreign court's territorial jurisdiction."  In that case, the petitioner sought discovery from an author who allegedly participated in *ex parte* communications with the Honduran court to the detriment of the respondent's legal case before the Honduran court.  *Id.*, at *1-2. Petitioner was unable to provide any evidence that respondent had "any relationship with or knowledge or any information regarding an adverse party in the Honduran proceedings."  As a result, the court was unconvinced that respondent was beyond the legal reach of the foreign court.  *In Re Green*, 2016 WL 10319091, at *3.  The facts set forth here differ.  CPA admits that Mr. Mischler is a former employee of CPA's North American affiliate and worked in the same office charged with managing CPA's American contracts. (ECF No. 15-1, at 12).  Thus, it is more than mere speculation

14

that Mr. Mischler possesses knowledge about the management of CPA's American contracts. Additionally, "[t]he Royal Court cannot compel a person who is located outside Jersey and is not subject to the jurisdiction of the Court . . . to give disclosure or to attend trial in Jersey." (ECF No. 16-6, at 3). Mr. Mischler's likely possession of relevant information and his status as a non-participant to the foreign litigation are enough to indicate that the first *Intel* factor weighs in favor of denying CPA's motion to vacate.

### 2. Isle of Jersey's Receptiveness to Discovery

Second, CPA recognizes that § 1782 does not explicitly require the Royal Court to allow discovery of the evidence sought, but maintains that the Royal Court should have the opportunity to determine "whether the sought after evidence is discoverable or relevant under Jersey law." (ECF No. 15-1, at 28). Polymer responds that, absent a clear directive or authoritative proof of the foreign nation's unwillingness to receive evidence gathered outside its jurisdiction, U.S. district courts should presume that the foreign court is willing to receive evidence gathered under § 1782. (ECF No. 16, at 25). Polymer supports this assertion with demonstrations of the Royal Court's past willingness to receive discovery collected under § 1782. (ECF No. 16, at 26).

It is correct that other jurisdictions have more clearly enumerated a standard for assessing whether a foreign court is

reluctant to receive U.S. federal-court judicial assistance. Courts within the Fourth Circuit, however, have applied the general approach that, in the absence of a foreign court's clear rejection of the assistance, the § 1782 application should be granted. *See, e.g., Goenechea*, 2016 WL 560689, at *3 ("[The party opposing discovery] has not presented any evidence that a Spanish judge, either during the conciliation or in a later judicial proceeding, would not be willing to receive the evidence obtained during discovery."); *Oncology Found.*, 2017 WL 2376769, at *1 ("Second, nothing in the record before the Court suggests that the European Patent Office would be unreceptive to the issuance of the subpoena, and so this factor is neutral in the analysis."). Without additional evidence that the Royal Court opposes U.S. Court assistance, the second *Intel* factor weighs in favor of denying CPA's motion to vacate.

### 3. Circumvention of the Proof Gathering Process

Third, CPA again references the Royal Court's alleged unwillingness to allow a deposition of Mr. Mischler as evidence that Polymer is using § 1782 to circumvent the Isle of Jersey's proof gathering process. (ECF No. 15-1, at 29). CPA makes an additional argument on the third *Intel* factor, pointing to the forum selection clause in the parties' contract as evidence that Polymer's use of § 1782 is an "attempt[] to evade foreign proof-gathering restrictions and disturb the contractually based

16

expectations of the parties." (ECF No. 15-1, at 30). Polymer responds that the § 1782 application does not circumvent the Royal Court's proof-gathering process because Polymer brought the § 1782 application in good faith, the evidence sought is "overwhelmingly American in character," and the forum selection clause did not distinguish between substantive and procedural application. (ECF No. 16, at 29-30).

Again, the Fourth Circuit has not identified a precise test for determining whether discovery sought under § 1782 intends to circumvent foreign proof-gathering processes. However, § 1782 does not impose a foreign-discoverability requirement. *Intel Corp.*, 542 U.S. at 243; *see also Kulzer v. Esschem, Inc., 390 F.App'x 88*, 92 (3ᵈ Cir. 2010) ("The court must consider whether the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules; however, that consideration cannot serve as the sole determining factor because the statute does not reference a requirement of discoverability under the foreign country's laws.")

Polymer is incorporated in the United States, (ECF No. 1-1, at 6), CPA is a global company incorporated in the Isle of Jersey and maintains offices around the world, (ECF No. 1-4, at 2), and Mr. Mischler's employment relationship with CPA took place in the United States (ECF No. 15-1, at 12). The multi-jurisdictional nature of the involved parties and potential litigation indicate

that Polymer's discovery endeavors are not an attempt to circumvent the Isle of Jersey's proof gathering processes.[5]

There is no definitive test for evaluating CPA's second circumvention argument that a party's use of § 1782 despite the existence of a foreign forum selection clause qualifies as circumvention. The Seventh Circuit previously analyzed foreign forum selection clauses, warning of "potential abuses that would warrant a denial" of a § 1782 application:

> Other things to watch out for are a forum-selection clause in a contract, which might indicate the parties' preference for a court system that doesn't contemplate the level of compulsory process available in America; and a party's effort to combine the substantive law of a foreign country with the expansive discovery opportunities available in the United States—a clue would be that the plaintiff had sued in an inconvenient forum while seeking discovery in the United States.

*Heraeus Kulzer,* 633 F.3d at 595. Yet decisions finding such are uncommon.[6]    Instead, as mentioned above, other courts have

---

[5] Polymer's § 1782 application contrasts with a German company's request evaluated by the Southern District of New York. There, the court concluded that the German character of the German company's § 1782 application constituted a circumvention attempt, concluding that "the locus of this action is so clearly in Germany and there is no suggestion that any documents sought are outside the jurisdictional reach of the German courts, this Court is concerned that Kreke's application is an attempt to circumvent foreign discovery procedures." *In re Kreke Immobilien KG*, No. 13 MISC. 110 NRB, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 2013).

[6] Although such decisions are rare, the Southern District of New York rejected a § 1782 application because the applicant's

referenced parties' access to discovery via § 1782 even in the presence of a foreign forum selection clause.

Furthermore, CPA admits that the evidence Polymer seeks is likely unavailable in the Isle of Jersey. (ECF No. 15-7, at 6) ("Third party discovery in Jersey is an exceptional remedy and the Royal Court will consider, based on the facts and circumstances of each case, whether it is necessary to order such disclosure in accordance with Jersey law."). The parties' joint stipulation also reduced the scope of Polymer's § 1782 request to include only Mr. Mischler's deposition testimony. (ECF No. 11, at 2). These facts indicate that Polymer's use of § 1782 despite the Isle of Jersey forum selection clause is not an attempt to combine the substantive laws of the Isle of Jersey with the expansive discovery opportunities available in the United States. Instead, Polymer's use of § 1782 to acquire Mr. Mischler's testimony complies with § 1782's "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and

---

"motion [was] clearly an attempt to circumvent foreign proof gathering restrictions that were contractually provided for by the parties' choice of forum clause." *Aventis Pharma*, 2009 WL 3754191, at *1; *see also In re Kreke*, 2013 WL 5966916, at *6 ("Moreover, not only is Germany the natural forum for this dispute, but [the petitioner] already assented to foreign authority by signing a contract with Oppenheim that contained a forum selection clause. Because the petitioner previously agreed to a foreign forum with all its requisite procedural rules, an application of U.S. discovery protocol here would evade foreign proof-gathering restrictions.") (internal citations and quotation marks omitted).

encouraging foreign countries by example to provide similar means of assistance to our courts." *Al Fayed v. United States*, 210 F.3d 421, 424 (4th Cir. 2000) (internal quotation marks omitted). Thus, the third *Intel* factor weighs in favor of denying CPA's motion to vacate.

### 4. Unduly Intrusive or Burdensome

Finally, CPA argues that Polymer's discovery request is overbroad and burdensome because Polymer admittedly plans to use the information gathered in the deposition of Mr. Mischler for other litigation against CPA. (ECF No. 15-1, at 24; 16, at 32). Polymer responds that CPA "lack[s] standing to challenge the subpoena on the basis of undue burden." (ECF No. 16, at 31). Polymer adds that, even if CPA has standing to assert a challenge on the basis of undue burden, CPA's general complaint of undue burden and expense lacks the level of detail necessary to be successful. (ECF No. 16, at 31). Polymer closes by asserting that Polymer's potential use of the information sought under § 1782 is not cause for denial of their § 1782 application. (ECF No. 16, at 32).

CPA relies on *Lazardis v. Int'l Ctr. for Missing & Exploited Children, Inc.*, 760 F.Supp.2d 109 (D.D.C. 2011), *aff'd sub nom. In re Application for an Order Pursuant to 28 U.S.C. § 1782*, 473 F.App'x 2 (D.C. Cir. 2012), to assert that the information Polymer seeks from Mr. Mischler is for general use and thus constitutes an

20

overbroad and burdensome request. In that case, the court concluded that the information sought would likely provide the applicant with evidence for general use instead of providing assistance to "Greek tribunals in their investigation or prosecution of specific criminal acts." *Id.* at 115.

In contrast, the Second Circuit has held that parties may lawfully use information accessed under § 1782 in future foreign proceedings. *In re Accent Delight International Ltd.*, 869 F.3d 121, 135 (2ᵈ Cir. 2017) ("[W]e hold that [§] 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise."). Addressing concerns that allowing use of evidence gathered pursuant to § 1782 in other litigation would result in more incidents of sham litigation, the court advised parties with this concern to "bring evidence of such chicanery to the [§] 1782 court's attention." *Id.* at 135 (internal quotation marks omitted).

Polymer's interest in using the evidence sought for other litigation does not negate the fact that the evidence also relates to the potential Isle of Jersey litigation. Additionally, Polymer has provided credible evidence of its intention to bring suit against CPA in the Isle of Jersey, indicating that Polymer's application was not filed under the guise of sham litigation.

Thus, the fourth *Intel* factor weighs in favor of denying CPA's motion to vacate.

## V. Motion to Quash and for Protective Order

CPA alternatively requests that the court "quash the Subpoena on relevance and burden grounds" because the subpoena "is an undue burden on both Mr. Mischler and CPA—which is being forced to litigate a dispute on two fronts despite a mandatory forum selection clause directing that all such disputes . . . be litigated in Jersey." (ECF No. 15-1, at 31-32). Polymer's response does not directly address CPA's motion to quash.

"[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26. Thus, regardless of whether the Court considers [CPA]'s Motion under Rule 45 or Rule 26, the Court must review Defendant's subpoena[] under the relevancy standards set forth in Rule 26(b)." *Singletary v. Sterling Transport Co., Inc*., 289 F.R.D. 237, 240-41 (E.D.Va. 2012) (citations omitted) (citing *Cook v. Howard*, 484 Fed.Appx. 805, 812 (4th Cir. 2012) (per curiam)). Pursuant to Fed.R.Civ.P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the

> issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 45(d)(3)(A)(iv), however, requires the court to quash or modify a subpoena that "subjects a person to undue burden." "Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(c)(3)(A)(iv) usually raises a question of the reasonableness of the subpoena," an analysis that requires "weighing a subpoena's benefits and burdens" and "consider[ing] whether the information is necessary and whether it is available from any other source." Charles Alan Wright & Arthur R. Miller *et al.*, 9A Fed. Prac. & Proc. Civ. § 2463.1 (3d ed. 2018). This inquiry is "highly case specific" and involves "an exercise of judicial discretion." *Id.* "The burden of proving that a subpoena is oppressive is on the party moving to quash." *Fleet Bus. Credit, LLC v. Solarcom, LLC*, No. Civ. AMD 05-901, 2005 WL 1025799, at *1 (D.Md. May 2, 2005) (internal quotation marks omitted).

As already discussed, Mr. Mischler possesses knowledge about the management of CPA's American contracts. Thus, the court declines to quash Polymer's subpoena on relevancy grounds.

CPA's argument that the subpoena constitutes an undue burden is equally unconvincing. Although CPA asserts that the subpoena presents an undue burden on both Mr. Mischler and CPA, the undue burden contemplated by Rule 45 is one placed on the direct

recipient of the subpoena, Mr. Mischler in this case, not on another party such as CPA. *See CineTel Films, Inc. v. Does 1-1,052*, 853 F.Supp.2d 545, 556-57 (D.Md. 2012); *see also Third Degree Films, Inc. v. Does 1-108*, No. 11-3007, 2012 WL 669055, *3 (D.Md. Feb. 28, 2010) ("[The] argument that the subpoena presents an undue burden is unavailing because the subpoena is directed toward the ISPs and not the Doe Defendants and accordingly does not require [the Doe Defendants] to produce any information or otherwise respond.") (quoting *Third Degree Films, Inc. v. Does 1-118*, No. 11-cv-03006-AW, 2011 WL 6837774, at *3 (D.Md. Dec. 28, 2011)); *Call of the Wild Movie v. Smith*, 274 F.R.D. 334, 338 (D.D.C. 2011) ("The plaintiff has issued subpoenas to the putative defendants' ISPs, not to the putative defendants themselves. Consequently, the putative defendants face no obligation to produce any information under the subpoenas issued to their respective ISPs and cannot claim any hardship, let alone undue hardship."). Mr. Mischler indicated his willingness to comply with a deposition subpoena, resides within close distance to the deposition location and declined to oppose the § 1782 application. (ECF No. 1-1, at 6). CPA asserts that the information Mr. Mischler possesses is capable of acquisition through other means, but fails to provide evidence that Mr. Mischler *does not* possess unique information about CPA's pricing and billing practices. Thus, there

is no indication that fulfilling Polymer's subpoena would impose an undue burden on Mr. Mischler.

If the court allows the subpoena to stand, CPA "requests that the [c]ourt enter a protective order to protect the confidentiality of the information provided by Mr. Mischler . . . and to limit use of his testimony to the Jersey action only." (ECF No. 15-1, at 32). Polymer agrees "to the entry of an appropriate confidentiality order that would protect CPA Global's legitimate trade secrets and confidentiality interests from disclosure to competitors or the public." (ECF No. 16, at 33). However, Polymer requests issuance of the confidentiality order with modifications that would allow use of the discovery information by other CPA customers seeking to resolve similar claims. (*Id.*, at 34). CPA disputes Polymer's proposed modification, arguing that allowing others to access the discovery information would contravene § 1782's limitation of "use in a specific foreign proceeding" and violate Jersey law, which limits compelled discovery to use for the litigation in which it is disclosed. (ECF No. 17, at 23).

Fed.R.Civ.P 26(c) permits the court "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." The burden is on the movant to establish good cause under Rule 26(c); the movant must set forth specific and particular facts, rather than broad

conclusory statements as to why a protective order should issue. *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D.Md. 2006). A protective order is appropriate here to protect CPA's trade secrets and maintain confidentiality of the information possessed by Mr. Mischler. However, as held in *Deford v. Schmid Prod. Co., a Div. of Schmid Labs.*, 120 F.R.D. 648, 654 (D.Md. 1987), "[s]haring discovery materials may be particularly appropriate where multiple individual plaintiffs assert essentially the same alleged wrongs[.]" Recognizing this allowance while remaining mindful that § 1782 permits access to discovery intended "for use in a proceeding in a foreign or international tribunal," the court will enter a protective order limiting dissemination of the information relayed in Mr. Mischler's deposition to other parties bringing an action in Jersey for overcharging against CPA. 28 U.S.C. § 1782.

## VI. Motion for Stay Pending Appeal

CPA "intends to appeal any order granting the [§] 1782 [a]pplication and denying the motion to quash," and asks the court to stay the June 27, 2018 order pending a decision on CPA's forthcoming appeal. (ECF No. 15-1, at 27). Polymer responds that a stay is not warranted because CPA cannot demonstrate that it will be successful on the merits of its appeal or show irreparable harm. (ECF No. 16, at 35-36).

District courts have discretion to stay an order granting a § 1782 application pending appeal. *Scripps-Howard Radio v. F.C.C.*,

316 U.S. 4, 9-10 (1942) ("It has always been held . . . that, as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal."); *In re Application of Alves Braga*, 789 F.Supp.2d 1294, 1307 (S.D.Fla. 2011) ("The broad authority to grant a stay extends to 28 U.S.C. § 1782 proceedings.").

CPA's request turns on four factors: "(1) whether [CPA] has made a strong showing that [it] is likely to succeed on the merits; (2) whether [CPA] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure [Polymer]; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The party seeking a stay is successful when the "balance of equities weighs in favor of [that] party," but "the burden of meeting the standard is a heavy one." Charles Alan Wright & Arthur R. Miller *et al.*, 11 Fed. Prac. & Proc. Civ. § 2904 (3d ed. 2018) (internal citations omitted).

For reasons already explained at length in the motion to vacate section, CPA has not made a strong showing that it is likely to succeed on the merits of its appeal. Thus, CPA's request for a stay pending appeal will be denied.

## VII. Conclusion

For the foregoing reasons, the motion to intervene, vacate the court's June 27, 2018 order, quash the subpoena directed to

Joseph M. Mischler and provide a protective order, or stay pending appeal filed by CPA Global Limited will be granted in part and denied in part.  A separate order will follow.


                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge